**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MEDIFLEET, INC., | : | CASE NO. 3:16-cv-1402 |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| MIRACA LIFE SCIENCES, INC., | : | |
| LAKEWOOD PATHOLOGY | : | |
| ASSOCIATES, INC. d/b/a MIRACA | : | |
| LIFE SCIENCES f/k/a PLUS | : | |
| DIAGNOSTICS, AND PATH-TEC | : | |
| HOLDINGS, INC. | : | |
| Defendants. | : | AUGUST 17, 2016 |
| | : | |

## COMPLAINT

Plaintiff, Medifleet, Inc., for its Complaint, states:

## THE PARTIES

1.      Plaintiff, Medifleet, Inc. ("Medifleet"), is, and at all times relevant hereto has been, a privately-owned Connecticut corporation.

2.      Medifleet's principal place of business has at all times relevant hereto been in New Haven County, Connecticut.

3.      Defendant, Miraca Life Sciences, Inc. ("Miraca"), is, and at all times pertinent hereto has been, a Delaware corporation with its principal place of business in Irving, Texas.

4.      Defendant, Lakewood Pathology Associates, Inc. d/b/a Miraca Life Sciences f/k/a Plus Diagnostics ("Plus Diagnostics"), is, and at all times relevant hereto has been, a New Jersey corporation with its principal place of business in Union, New Jersey.  Plus Diagnostics is registered to do business in the State of Connecticut.

5.      Defendant, Path-Tec Holdings, Inc. d/b/a Path-Tec, Inc. ("Path-Tec"), is, and at all times relevant hereto has been, a Georgia corporation; at all times relevant hereto, Path-Tec's principal place of business was located in Columbus, Georgia.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds the sum of $75,000.00 dollars, exclusive of interests and costs, and the parties are citizens of different states.

7.      Venue is proper in the District of Connecticut under 28 U.S.C. § 1391(b)(2), as this is the judicial district in which a substantial part of the events or omissions giving rise to Medifleet's claims occurred because: (a) Plus Diagnostics and Miraca, as its successor, contracted with Medifleet, whose principal place of business is located in this judicial district, to be the exclusive courier providing services to Plus Diagnostics in a specific geographic area of service that included, *inter alia*, Connecticut; and (b) Path-Tec, as a vendor hired by Miraca to provide courier management services on behalf of Miraca and/or Plus Diagnostics, designated couriers other than Medifleet to provide services to Plus Diagnostics in certain states located within the specific geographic area where Medifleet had been contracted by Plus Diagnostics and/or Miraca to provide services exclusively.

## FACTUAL BACKGROUND

8.      Medifleet is a provider of customized courier and logistics services to the healthcare industry, including diagnostic specimen handling and transport. Medifleet's customers include hospitals, diagnostic laboratories, physicians, medical institutions, and other healthcare-related companies.

9.     Miraca is a subsidiary of Miraca Holdings, Inc., Japan's largest clinical pathology laboratory provider. Miraca provides subspecialty anatomic pathology services in the fields of breast health, dermatology, gastroenterology, hematology and urology. Miraca is the largest independent anatomic pathology laboratory in the United States.

10.     Plus Diagnostics is a cytology, histology and molecular pathology laboratory with a specialization in dermatopathology, hematopathology, gastrointestinal pathology and genitourinary pathology.

11.     Path-Tec is a courier management and specimen tracking company that manages the specimen collection and transport process, such as courier scheduling, route management, supply tracking, specimen tracking and reporting.

12.     On or about February 28, 2011, Medifleet entered into a three-year contract with Plus Diagnostics titled "Courier Services / Distribution Management Agreement" (the "Plus Diagnostics Contract"), to provide courier services for Plus Diagnostics, including the transport and delivery of medical records, laboratory specimens, blood products, pharmaceuticals, returns and documents (the "Plus Diagnostics Business").

13.     Section IV of the Plus Diagnostics Contract, "Term," provides:

The initial length and term of this Agreement shall be Three (3) years, commencing February 28, 2011 and expiring March 1, 2014. Upon expiration of said initial term, this Agreement shall thereafter automatically renew for successive terms of One (1) year each, unless a written notice of termination by either party is given to the other party at least ninety (90)

days prior to either the initial term expiration date or any renewal anniversary date.

14.     Section V of the Plus Diagnostics Contract, "Compensation," provides: [Plus Diagnostics] agrees to pay, and [Medifleet] agrees to accept as compensation of its services hereunder, compensation in the amounts and at the rates set forth in Exhibit "E", Compensation Schedules, which is attached hereto . . . . The parties further agree that [Medifleet] will bill/invoice [Plus Diagnostics] in the manner, and at the times, set forth in Exhibit "E" and that [Plus Diagnostics] will pay the amounts so billed/invoiced in accordance with the terms set forth in Exhibit "E".

15.     The "Compensation Schedule" set forth in Exhibit "E" to the Plus Diagnostics Contract provides that Plus Diagnostics pay Medifleet according to the "Scope of Services & Schedule 1," or "per route." A "per route" payment rate is calculated based on all of the scheduled route services provided by Medifleet.

16.     Specifically, the Plus Diagnostics Contract provides that Medifleet is to bill Plus Diagnostics a weekly charge of $24,687.39 for the scheduled route services provided by Medifleet, plus any additional nonscheduled pick-up and/or delivery and/or stat orders.

17.     Section V of the Plus Diagnostics Contract further provides: "Any failure by [Plus Diagnostics] to timely pay any invoice properly submitted by [Medifleet] may, in [Medifleet's] sole discretion, be deemed a breach of this Agreement by [Plus Diagnostics]."

18.     Under Section V of the Plus Diagnostics Contract:

[Plus Diagnostics] also agrees to pay all costs incurred in collection, trial

and appeal against [Plus Diagnostics] or Guarantor (including attorney's

fees and charges for paralegals and others working under the direction or

supervision of attorney), expenses and other costs, including sales and

use taxes thereon incurred by [Medifleet] in the collection of said monies

due under, or otherwise enforcing its rights under, the terms of this

agreement.

19.     Section XI of the Plus Diagnostics Contract, "Notifications," provides in

relevant part: "Any notice, demand, or other communication given to or by or served

upon any party hereto shall be in writing and shall be given or served by hand delivery,

commercial overnight courier service, or U.S. registered or certified mail, properly

addressed to the party . . . or by facsimile."

20.     Section XII of the Plus Diagnostics Contract, "Governing Law; Venue;

Jurisdiction," states that each party to the Plus Diagnostics Contract submits to the

exclusive jurisdiction of the Federal District Court in Connecticut in connection with any

legal suit, action or proceeding arising out of or relating to the Plus Diagnostics

Contract.

21.     Section XIII of the Plus Diagnostics Contract, "Binding on Successors,"

provides: "This Agreement shall be binding upon and inures to the benefit of any and all

successor, trustees, assigns, agents and other successors-in-interest of the parties to

this Agreement."

22.     Under the "Stipulation of Exclusivity" section of the Plus Diagnostics Contract, attached and incorporated by reference as Exhibit "C," Plus Diagnostics agreed that Medifleet "shall be the **exclusive** Courier and method of delivery utilized by [Plus Diagnostics] **within the territory** for the purposes which are described and set forth in the Agreement and/or in any Exhibits attached thereto, and particularly Exhibits 'A' and 'B.'" (the "Exclusivity Provision").

23.     The "Specification of the Geographic Areas and/or Specific Pickup and/or Delivery Locations or Routes Covered by this Agreement" section of the Plus Diagnostics Contract, attached and incorporated by reference as Exhibit "B," provides that "the specific geographic area of service is defined as all delivery and/or pick-up locations listed in Scope of Services."

24.     Under the "Scope of Services & Schedule 1" section of Exhibit "E" to the Plus Diagnostics Contract, the specific geographic area of service is Connecticut, Delaware, Massachusetts, Maryland, New Hampshire, New Jersey, New York, Pennsylvania and Rhode Island (the "Designated Territories").

25.     Upon information and belief, on or about October 22, 2013, Miraca acquired Plus Diagnostics.

26.     Pursuant to Section XIII of the Plus Diagnostics Contract, Miraca was bound by the terms of the Plus Diagnostics Contract as successor of Plus Diagnostics.

27.     Upon information and belief, in or about November 2013, Miraca hired Path-Tec to solicit bids for courier services on its behalf.

28.     On or about November 25, 2013, Path-Tec sent multiple couriers, including Medifleet, a Request for Pricing (the "Miraca RFP") soliciting proposals to

provide courier services for Miraca (the "Miraca Business"). Medifleet submitted a proposal to Path-Tec in response to the Miraca RFP.

29.    At that time, and on multiple occasions thereafter, Medifleet sought and received confirmation from Path-Tec and/or Miraca that the Plus Diagnostics Business was not part of the Miraca RFP.

30.    Plus Diagnostics did not provide Medifleet with written notification, in the manner required under Section XI of the Plus Diagnostics Contract, of its intent to terminate the Plus Diagnostics Contract on or before December 1, 2013 (at least 90 days prior to the initial term expiration date of March 1, 2014), as required under Section IV of the Plus Diagnostics Contract. Accordingly, the Plus Diagnostics Contract automatically renewed for an additional year term, expiring March 1, 2015.

31.    Medifleet continued to provide courier services to Plus Diagnostics in accordance with the terms of the Plus Diagnostics Contract.

32.    On or about February 25, 2014, Path-Tec, on behalf of Miraca, announced the Miraca RFP awards; Path-Tec awarded Medifleet with the Miraca Business in certain major markets, including those located in Maryland, Virginia, the District of Columbia, Pennsylvania, North Carolina, Ohio and Texas (the "Miraca Award"). Path-Tec awarded the Miraca Business located in other markets, including those in New York and New Jersey, to another courier.

33.    Through the Miraca Award, Medifleet learned, for the first time, that it was to lose the Plus Diagnostics Business in two of the Designated Territories in the Plus Diagnostics Contract: New York and New Jersey.

34.     Thereafter, on or about March 13, 2014 and March 27, 2014, Medifleet requested clarification from Path-Tec and/or Plus Diagnostics as to the Plus Diagnostics Business in the other Designated Territories.

35.     In response, Path-Tec and/or Miraca informed Medifleet that where Path-Tec had awarded a courier the Miraca Business in a particular state, that courier received and/or retained the Plus Diagnostics Business in that state as well. Where a courier was not awarded the Miraca Business in a particular state, that courier would eventually lose the Plus Diagnostics Business in that state to another courier.

36.     Upon information and belief, Miraca hired Path-Tec to manage and facilitate the transition of the Plus Diagnostics Business from Medifleet to other couriers in the Designated Territories where Medifleet was not awarded the Miraca Business.

37.     Upon information and belief, Path-Tec had knowledge of the Plus Diagnostics Contract and the terms contained therein, including the Exclusivity Provision.

38.     In or about March 2014, in violation of the Exclusivity Provision, Path-Tec and/or Miraca began to transition the Plus Diagnostics Business from Medifleet to other couriers in the Designated Territories where Medifleet was not awarded the Miraca Business.

39.     In addition, Path-Tec and/or Miraca unilaterally modified the payment rate for the services provided by Medifleet under the Plus Diagnostics Contract. Specifically, Path-Tec and/or Miraca sought to bill Medifleet the "per stop / per state" payment rate for the Plus Diagnostics Business retained by Medifleet in the Designated Territories instead of the "per route" payment rate set forth in the Plus Diagnostics Contract.

40.     At no time did either Path-Tec or Miraca notify Medifleet of its intent to modify the payment rate for the Plus Diagnostics Business retained by Medifleet in the Designated Territories.

41.     At no time did Medifleet agree to modify the payment rate for the Plus Diagnostics Business retained by Medifleet in the Designated Territories from the "per route" payment rate to the "per stop / per state" payment rate.

42.     By design, the "per route" payment rate is more lucrative to Medifleet than the "per stop / per state" payment rate.

43.     Medifleet performed all of its obligations under the Plus Diagnostics Contract and, accordingly, sought full payment for its courier services in accordance with the "per route" payment rate set forth in the Plus Diagnostics Contract.

44.     Plus Diagnostics, Miraca and/or Path-Tec have failed to pay Medifleet in full for the courier services rendered by Medifleet under the Plus Diagnostics Contract.

45.     Medifleet performed all of its obligations under the Miraca Award and, accordingly, sought full payment for its courier services in accordance with the "per stop / per state" payment rate set forth in the Miraca Award.

46.     Path-Tec and/or Miraca have failed to pay Medifleet in full for the courier services rendered by Medifleet in accordance with the terms of the Miraca Award.

47.     Despite Medifleet's performance of its obligations under the Plus Diagnostics Contract and the Miraca Award (collectively, the "Agreements"), and its demand for full payment, Plus Diagnostics, Miraca and/or Path-Tec have refused to pay Medifleet in full for its courier services.

48.     Medifleet made demand for payment from Path-Tec, who, upon information and belief, is responsible for ensuring that Medifleet is paid in full for the courier services provided to Plus Diagnostics and/or Miraca under the terms of the Agreements.

49.     Despite due demand, Path-Tec has failed and/or refused to pay Medifleet in full for the courier services rendered to Plus Diagnostics and/or Miraca.

## COUNT ONE: BREACH OF CONTRACT RE PLUS DIAGNOSTICS CONTRACT (AGAINST MIRACA AND PLUS DIAGNOSTICS)

1–49. Paragraphs 1 through 49 of the Complaint are realleged as if set forth fully herein as Paragraphs 1 through 49 of Count One.

50.     Medifleet has performed all of its obligations under the Plus Diagnostics Contract.

51.     By the aforementioned conduct, Plus Diagnostics has deprived Medifleet of the benefit of the Plus Diagnostics Contract, including the Exclusivity Provision.

52.     Plus Diagnostics has failed to pay Medifleet for its services rendered in accordance with the payment rate set forth in the Plus Diagnostics Contract.

53.     Plus Diagnostics has thereby breached its contract with Medifleet.

54.     Miraca, as successor of Plus Diagnostics, is bound by the terms contained in the Plus Diagnostics Contract pursuant to Section XIII. Accordingly, Miraca is liable to Medifleet for breach of the Plus Diagnostics Contract.

55.     As a result of the foregoing breach(es) of the Plus Diagnostics Contract, Medifleet has incurred damages in the approximate sum of $238,466.70 (as of 09/03/2015), plus prejudgment interest and costs.

**COUNT TWO: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING RE PLUS DIAGNOSTICS CONTRACT (AGAINST MIRACA AND PLUS DIAGNOSTICS)**

1–55. Paragraphs 1 through 55 of Count One of the Complaint are realleged as if set forth fully herein as Paragraphs 1 through 55 of Count Two.

56.    The Plus Diagnostics Contract contains an implied covenant of good faith and fair dealing.

57.    By the Plus Diagnostics Contract, Medifleet reasonably expected to receive certain benefits including, but not limited to, the benefit of the Exclusivity Provision and the "per route" payment rate.

58.    The foregoing described wrongful conduct by Plus Diagnostics and/or Miraca injured and interfered with Medifleet's receipt of the benefits that it reasonably expected to receive under the Plus Diagnostics Contract.

59.    In committing the foregoing described wrongful acts that injured and interfered with Medifleet's receipt of benefits that it reasonably expected to receive under the Plus Diagnostics Contract, Plus Diagnostics and/or Miraca acted in bad faith, with self-interested and sinister motives, and with a design to mislead and deceive Medifleet.

60.    The foregoing described wrongful conduct by Plus Diagnostics and/or Miraca, in breach of the covenant of good faith and fair dealing implied in the Plus Diagnostics Contract, directly and proximately caused Medifleet to suffer economic harm and incur damages in the approximate sum of $238,466.70 (as of 09/03/2015), plus prejudgment interest and costs.

## COUNT THREE: ACCOUNT STATED RE PLUS DIAGNOSTICS CONTRACT (AGAINST MIRACA, PLUS DIAGNOSTICS AND PATH-TEC)

1–60. Paragraphs 1 through 60 of Count Two of the Complaint are realleged as if set forth fully herein as Paragraphs 1 through 60 of Count Three.

61.     Medifleet submitted invoices to Plus Diagnostics for payment of its services rendered in accordance with the Plus Diagnostics Contract.

62.     Plus Diagnostics received and retained the invoices submitted by Medifleet without protest. Accordingly, Plus Diagnostics is liable to Medifleet for an account stated.

63.     Miraca, as successor of Plus Diagnostics, is bound by the terms contained in the Plus Diagnostics Contract pursuant to Section XIII. Accordingly, Miraca also is liable to Medifleet for an account stated.

64.     Upon information and belief, as a vendor hired by Miraca to provide courier management services on behalf of Miraca and/or Plus Diagnostics, Path-Tec is, and at all times relevant hereto was, responsible for ensuring that Medifleet is paid in full for the courier services rendered to Plus Diagnostics under the terms of the Plus Diagnostics Contract. Accordingly, Path-Tec is liable to Medifleet for an account stated.

65.     By virtue of the foregoing, Medifleet is entitled to a judgment against all Defendants in the amount of $238,466.70 (as of 09/03/2015), as an account stated, plus the costs of disbursements of this action and interest as provided by law.

## COUNT FOUR: UNJUST ENRICHMENT RE PLUS DIAGNOSTICS CONTRACT (AGAINST MIRACA AND PLUS DIAGNOSTICS)

1–49. Paragraphs 1 through 49 of the Complaint are realleged as if set forth fully herein as Paragraphs 1 through 49 of Count Four.

50.     Medifleet conferred a benefit on Plus Diagnostics, including the rendering of Medifleet's courier services to Plus Diagnostics.

51.     Medifleet conferred a benefit on Miraca, as successor of Plus Diagnostics, including the rendering of Medifleet's courier services to Plus Diagnostics.

52.     Plus Diagnostics and/or Miraca voluntarily accepted and retained the benefit conferred.

53.     The circumstances render Plus Diagnostics and/or Miraca's retention of the benefit inequitable unless Plus Diagnostics and/or Miraca pay Medifleet the value of the benefit conferred in the approximate amount of $238,466.70 (as of 09/03/2015), plus prejudgment costs and interest.

54.     Medifleet is entitled to damages as a result of Plus Diagnostics and/or Miraca's unjust enrichment.

**COUNT FIVE: PROMISSORY ESTOPPEL RE PLUS DIAGNOSTICS CONTRACT (AGAINST MIRACA AND PLUS DIAGNOSTICS)**

1–49. Paragraphs 1 through 49 of the Complaint are realleged as if set forth fully herein as Paragraphs 1 through 49 of Count Five.

50.     Plus Diagnostics and/or Miraca, as successor of Plus Diagnostics, clearly and definitely promised Medifleet that, in exchange for the rendering of Medifleet's courier services to Plus Diagnostics, Medifleet would receive certain benefits including, but not limited to, the benefit of the "per route" payment rate for its courier services, as well as being the exclusive courier rendering services to Plus Diagnostics in Connecticut, Delaware, Massachusetts, Maryland, New Hampshire, New Jersey, New York, Pennsylvania and Rhode Island.

13

51.     Plus Diagnostics and/or Miraca's promises were such that Plus Diagnostics and/or Miraca should reasonably have expected to induce reliance thereon by Medifleet, and did induce reliance thereon by Medifleet, to its detriment.

52.     Despite the promises of Plus Diagnostics and/or Miraca, Plus Diagnostics and/or Miraca failed to pay Medifleet for courier services rendered by it.

53.     Plus Diagnostics and/or Miraca continue to withhold full payment to Medifleet for its courier services rendered for Plus Diagnostics and/or Miraca's own benefit.

54.     By virtue of the foregoing, Plus Diagnostics and/or Miraca have breached their promises to Medifleet and caused Medifleet to suffer harm.

55.     As a result of the foregoing, Medifleet has sustained money damages in the approximate amount of $238,466.70 (as of 09/03/2015), plus prejudgment costs and interest.

## COUNT SIX: BREACH OF IMPLIED CONTRACT RE THE MIRACA AWARD (AGAINST MIRACA AND PATH-TEC)

1–49. Paragraphs 1 through 49 of the Complaint are realleged as if set forth fully herein as Paragraphs 1 through 49 of Count Six.

50.     Path-Tec, individually and/or as a duly authorized agent of Miraca, solicited proposals from multiple carriers, including Medifleet, to provide courier services for the Miraca Business.

51.     Path-Tec and/or Miraca represented to Medifleet, by words, actions and/or conduct that the Plus Diagnostics Business and the courier services provided by Medifleet to Plus Diagnostics under the Plus Diagnostics Contract, were not part of the Miraca RFP.

52.     In exchange for Path-Tec and/or Miraca's representations and assurances, Medifleet agreed to submit a proposal to Path-Tec in response to the Miraca RFP (the "Medifleet Proposal").

53.     Path-Tec, on behalf of Miraca, awarded Medifleet with the Miraca Business in certain markets based on the Medifleet Proposal.

54.     By awarding the Miraca Business to Medifleet, Miraca and/or Path-Tec accepted and agreed to the terms set forth in the Medifleet Proposal.

55.     In addition, Path-Tec, individually and/or as a duly authorized agent of Miraca, represented to Medifleet, by its words, actions and/or conduct that it was responsible for managing courier services provided to Miraca and for ensuring that contracted couriers, such as Medifleet, are paid fully for said courier services.

56.     Medifleet rendered courier services to Miraca in accordance with, and in reliance on the terms of the Medifleet Proposal and/or the Miraca Award.

57.     Medifleet has performed all of its obligations under the Medifleet Proposal and/or the Miraca Award.

58.     Path-Tec and/or Miraca have transitioned the Plus Diagnostics Business from Medifleet to other couriers in the markets where Path-Tec and/or Miraca did not award Medifleet with the Miraca Business.

59.     Path-Tec and/or Miraca breached their agreement with Medifleet when they transitioned the Plus Diagnostics Business from Medifleet to other couriers.

60.     Path-Tec and/or Miraca have failed to pay Medifleet in full for the courier services rendered by Medifleet in accordance with the terms of the Medifleet Proposal and/or the Miraca Award.

61.     Path-Tec and/or Miraca have breached their agreement with Medifleet based on the terms of the Medifleet Proposal and/or the Miraca Award, in, among other things, failing to pay Medifleet in accordance with terms of the Medifleet Proposal and/or the Miraca Award.

62.     Path-Tec has breached its agreement with Medifleet to ensure that Medifleet is paid fully for courier services rendered to Miraca.

63.     As a result of the foregoing breach(es), Medifleet has incurred damages in the approximate sum of $172,047.34 (as of 09/03/2015), plus prejudgment interest and costs.

## COUNT SEVEN: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING RE THE MIRACA AWARD (AGAINST MIRACA AND PATH-TEC)

1–63. Paragraphs 1 through 63 of the Count Six of the Complaint are realleged as if set forth fully herein as Paragraphs 1 through 63 of Count Seven.

64.     The Miraca Award contains an implied covenant of good faith and fair dealing.

65.     By the terms of the Miraca Award, Medifleet reasonably expected to receive certain benefits.

66.     The foregoing described wrongful conduct by Path-Tec and/or Miraca injured and interfered with Medifleet's receipt of the benefits that it reasonably expected to receive under the Miraca Award.

67.     In committing the foregoing described wrongful acts that injured and interfered with Medifleet's receipt of benefits that it reasonably expected to receive under the Miraca Award, Path-Tec and/or Miraca acted in bad faith, with self-interested and sinister motives, and with a design to mislead and deceive Medifleet.

16

68.     The foregoing described wrongful conduct by Path-Tec and/or Miraca, in breach of the covenant of good faith and fair dealing implied in the Miraca Award, directly and proximately caused Medifleet to suffer economic harm and incur damages in the approximate sum of $172,047.34 (as of 09/03/2015), plus prejudgment interest and costs.

**COUNT EIGHT: ACCOUNT STATED RE THE MIRACA AWARD (AGAINST MIRACA AND PATH-TEC)**

1–63. Paragraphs 1 through 63 of the Count Six of the Complaint are realleged as if set forth fully herein as Paragraphs 1 through 63 of Count Eight.

64.     Medifleet submitted invoices to Miraca for payment of its services rendered in accordance with the Miraca Award.

65.     Miraca received and retained the invoices submitted by Medifleet without protest. Accordingly, Miraca is liable to Medifleet for an account stated.

66.     Upon information and belief, as a vendor hired by Miraca to provide courier management services on behalf of Miraca, Path-Tec is, and at all times relevant hereto was, responsible for ensuring that Medifleet is paid in full for the courier services rendered to Miraca under the terms of the Miraca Award.

67.     Medifleet submitted invoices to Path-Tec for payment of its services rendered to Miraca in accordance with the Miraca Award.

68.     Path-Tec received and retained the invoices submitted by Medifleet without protest.  Accordingly, Path-Tec is liable to Medifleet for an account stated.

69.     By virtue of the foregoing, Medifleet is entitled to a judgment against Miraca and/or Path-Tec in the amount of $172,047.34 (as of 09/03/2015), as an account stated, plus the costs of disbursements of this action and interest as provided by law.

## COUNT NINE: UNJUST ENRICHMENT (AGAINST MIRACA AND PATH-TEC)

1–49. Paragraphs 1 through 49 of the Complaint are realleged as if set forth fully herein as Paragraphs 1 through 49 of Count Nine.

50.    Medifleet conferred a benefit on Miraca and/or Path-Tec, including the rendering of Medifleet's courier services to Miraca.

51.    Miraca and/or Path-Tec voluntarily accepted and retained the benefit conferred.

52.    The circumstances render Miraca and/or Path-Tec's retention of the benefit inequitable unless Miraca and/or Path-Tec pay Medifleet the value of the benefit conferred in the approximate amount of $172,047.34 (as of 09/03/2015), plus prejudgment costs and interest.

53.    Medifleet is entitled to damages as a result of Miraca and/or Path-Tec's unjust enrichment.

## COUNT TEN: PROMISSORY ESTOPPEL (AGAINST MIRACA AND PATH-TEC)

1–49. Paragraphs 1 through 49 of the Complaint are realleged as if set forth fully herein as Paragraphs 1 through 49 of Count Ten.

50.    Miraca and/or Path-Tec clearly and definitely promised Medifleet that the courier services Medifleet provided to Plus Diagnostics under the Plus Diagnostics Contract were not part of the Miraca RFP.

51.    Miraca and/or Path-Tec's promises were such that Miraca and/or Path-Tec should reasonably have expected to induce reliance thereon by Medifleet, and did induce reliance thereon by Medifleet, to its detriment.

52.    In reliance on Miraca and/or Path-Tec's promises, Medifleet submitted a proposal to Path-Tec in response to the Miraca RFP (the "Medifleet Proposal").

53.    Path-Tec, on behalf of Miraca, awarded Medifleet with the Miraca Business in certain markets based on the Medifleet Proposal (the "Miraca Award").

54.    Miraca and/or Path-Tec clearly and definitely promised Medifleet that, in exchange for the rendering of Medifleet's courier services to Miraca, Medifleet would receive the benefit of the terms set forth in the Miraca Award, including, but not limited to, payment.

55.    Miraca and/or Path-Tec's promises were such that Miraca and/or Path-Tec should reasonably have expected to induce reliance thereon by Medifleet, and did induce reliance thereon by Medifleet, to its detriment.

56.    Despite the promises of Miraca and/or Path-Tec, Medifleet has lost and continues to lose the Plus Diagnostics Business to other couriers in the markets where Miraca and/or Path-Tec did not award Medifleet the Miraca Business.

56.    Despite the promises of Miraca and/or Path-Tec, Miraca and/or Path-Tec failed to pay Medifleet for courier services rendered to the Miraca Business.

57.    Miraca and/or Path-Tec continue to withhold full payment to Medifleet for its courier services rendered for Miraca and/or Path-Tec's own benefit.

58.    By virtue of the foregoing, Miraca and/or Path-Tec have breached their promises to Medifleet, and caused Medifleet to suffer harm in the approximate amount of $172,047.34 (as of 09/03/2015), plus prejudgment costs and interest.

## PRAYER FOR RELIEF

WHEREFORE, Medifleet demands that judgment be entered in its favor with interest, costs and such other relief deemed appropriate by the Court; and

1.    As to Count One, a monetary award in the sum of $238,466.70, the precise amount to be proven at trial plus interest thereon;

2.    As to Count Two, a monetary award in the sum of $238,466.70, the precise amount to be proven at trial plus interest thereon;

3.    As to Count Three, a monetary award in the sum of $238,466.70, the precise amount to be proven at trial plus interest thereon;

4.    As to Count Four, a monetary award in the sum of $238,466.70, the precise amount to be proven at trial plus interest thereon;

5.    As to Count Five, a monetary award in the sum of $238,466.70, the precise amount to be proven at trial plus interest thereon;

6.    As to Count Six, a monetary award in the sum of $172,047.34, the precise amount to be proven at trial plus interest thereon;

7.    As to Count Seven, a monetary award in the sum of $172,047.34, the precise amount to be proven at trial plus interest thereon;

8.    As to Count Eight, a monetary award in the sum of $172,047.34, the precise amount to be proven at trial plus interest thereon;

9.    As to Count Nine, a monetary award in the sum of $172,047.34, the precise amount to be proven at trial plus interest thereon;

10.    As to Count Ten, a monetary award in the sum of $172,047.34, the precise amount to be proven at trial plus interest thereon;

11.     Costs and disbursements; and

12.     Entry of judgment against all Defendants in an amount to be proven at trial together with Medifleet's costs, prejudgment interest and such other and further relief as the Court may deem just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Medifleet hereby demands a trial by jury on all issues so triable.

**MEDIFLEET, INC.**

By: _____

Glenn A. Duhl ct03644
Michael P. McGoldrick ct11635
Angelica M. Wilson ct29185
Siegel, O'Connor,
    O'Donnell & Beck, P.C.
150 Trumbull Street
Hartford, CT 06103
GAD: (860) 280-1215
MPM: (860) 280-1224
AMW: (860) 280-1212
Fax: (860) 527-5131
gduhl@siegeloconnor.com
mmcgoldrick@siegeloconnor.com
awilson@siegeloconnor.com